**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
DANIEL GATSON,                   :
                                 : Civil Action No. 10-5610 (DRD)
             Petitioner,         :
                                 :
      v.                         :     OPINION
                                 :
GREG BARTKOWSKI, et al.,         :
                                 :
             Respondents.        :
```

**APPEARANCES:**

> DANIEL GATSON, Petitioner *pro se*
> # 438674/750393B
> Talbot Hall - Unit Serenity
> 100-140 Lincoln Highway
> Kearny, New Jersey 07032
>
> CATHERINE ANTOINE FODDAI, ESQ.
> BERGEN COUNTY PROSECUTOR'S OFFICE
> 10 Main Street
> Hackensack, New Jersey 07601
> Counsel for Respondents

**DEBEVOISE**, Senior District Judge

Petitioner Daniel Gatson ("Petitioner"), a convicted state prisoner presently confined at the Talbot Hall halfway house in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about October 18, 2002. For the reasons stated herein, the Petition is denied for lack of substantive merit.

## I. BACKGROUND

### A. Procedural History

On or about December 18, 2000, a Bergen County Grand Jury indicted Petitioner with the following offenses: (Count One) third degree burglary, in violation of N.J.S.A. 2C:18-2; (Count Two) fourth degree unlawful possession of a weapon, specifically a stun gun, in violation of N.J.S.A. 2C:39-3h; and (Count Three) fourth degree hindering prosecution, in violation of N.J.S.A. 2C:29-3b(4). (Ra1,[1] Def./Resp.'s Brief and Appendix on Direct Appeal at Da1-Da2, Indictment No. 00-12-2520-2, Dec. 18, 2000.)

---

[1] "Ra" refers to the Respondents' appendix of exhibits that comprise the relevant state court record in this matter. The exhibits are identified as follows:

Ra1: Defendant/Respondent's ("Def./Resp.") Brief and Appendix on Direct Appeal, Jan. 4, 2006.
Ra2: State's Brief and Appendix on Direct Appeal, Mar. 20, 2006.
Ra3: Appellate Division Opinion, March 19, 2007.
Ra4: Def./Resp.'s Petition for Certification, Apr. 20, 2007.
Ra5: Def./Resp.'s Brief and Appendix on Appeal from denial of post-conviction relief, Apr. 16, 2009.
Ra6: Def./Resp.'s pro se Brief on Appeal from denial of post-conviction relief, Aug. 11, 2009.
Ra7: State's Brief and Appendix in Opposition, July 1, 2009.
Ra8: Appellate Division Opinion, Apr. 12, 2010.
Ra9: Def./Resp.'s Letter Petition for Certification, Apr. 27, 2010.
Ra10: Transcript of Trial, Jan. 29, 2002. (1T)
Ra11: Transcript of Trial, Jan. 30, 2002. (2T)
Ra12: Transcript of Trial, Jan. 31, 2002. (3T)
Ra13: Transcript of Trial, Feb. 4, 2002. (4T)
Ra14: Transcript of Trial, Jun. 25, 2002. (5T)
Ra15: Transcript of Trial, Jun. 26, 2002. (6T)
Ra16: Transcript of Trial, Jun. 27, 2002. (7T)
Ra17: Transcript of Trial, Jul. 2, 2002. (8T)

Pretrial hearings were conducted before the Honorable

Joseph S. Conte, J.S.C., in January and February 2002, with

respect to Petitioner's several motions to suppress physical

evidence, to suppress out-of-court identifications, and to

suppress Petitioner's statement to the police. (Ra10, Ra11, and

Ra13.) On January 30, 2002, Judge Conte denied the motions to

suppress out-of-court identifications and the physical evidence.

(Ra11, 2T 145:5-146:17; 146:20-148:10.) In a letter opinion

dated February 5, 2002, Judge Conte reiterated his finding that

the search of the vehicle was justified. (Ra5, Def./Resp.'s Br.

and App. at Da3-Da5.) A trial was held before a jury and the

Honorable Donald R. Venezia, J.S.C., on June 25, 26, 27 and July

2 and 3, 2002. (Ra14-Ra18.) During the trial, Judge Venezia

held a hearing on the admissibility of Petitioner's statement to

the police and ruled that the statement was admissible. (Ra15,

6T 158:1-159:5; 160:8-161:2.) The jury convicted Petitioner on

all counts in the indictment. (Ra18, 9T 11:14-12:6.)

On October 18, 2002, Judge Venezia sentenced Petitioner on

Count One to an eight year prison term with a four-year period

of parole ineligibility. (Ra19, 10T 52:4-11.) On Count Two,

Ra18: Transcript of Trial, Jul. 3, 2002. (9T)
Ra19: Sentencing transcript, Oct. 18, 2002. (10T)
Ra20: Transcript of Post-Conviction Relief Hearing, Feb. 27,
      2008. (11T or PCRT)

3

Judge Venezia imposed an 18-month prison term to run consecutive to the sentence imposed on Count One; and on Count Three, the Judge imposed an 18-month term to run concurrent with the term imposed on Count One. (Ra19, 10T 52: 12-22.) Judge Venezia also found that Petitioner's past criminal record warranted a finding of persistent offender status and sentenced Petitioner to an extended term. (Ra19, 10T 36:5-37:16.)

Petitioner thereafter filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division. On March 19, 2007, the Appellate Division affirmed the conviction, but remanded the matter for resentencing. (Ra3, App. Div. Op., Mar. 19, 2007.). The Supreme Court of New Jersey denied certification on June 1, 2007. (Petition at ¶ 9(g)(4)).

On or about August 6, 2007, Petitioner filed a petition for post-conviction relief ("PCR") in state court. (Ra8, App. Div. Op. at 2, Apr. 12, 2010.) The trial court heard argument on the PCR petition on February 27, 2008, and denied the PCR petition as well as Petitioner's request for an evidentiary hearing. (Ra20, PCRT 42:11-43:3.) Petitioner then filed an appeal with the Appellate Division. On April 12, 2010, the Appellate Division affirmed the trial court's denial of the PCR petition. (Ra8). The Supreme Court denied the petition for certification

4

on July 12, 2010. (Petition at Exhibit E, Docket entry no. 1-2).

Petitioner timely filed this habeas petition, pursuant to 28 U.S.C. § 2254, on or about October 28, 2010. The State responded to the petition, and provided the relevant state court record, on December 5, 2011. (Docket entry no. 9). Petitioner filed a reply/traverse on or about January 6, 2012, with a request for an evidentiary hearing. (Docket entry no. 10).

B. Factual Background

The facts of this case, as recounted by the state court on direct review, are afforded appropriate deference under 28 U.S.C. § 2254(e)(1). Accordingly, this Court will simply recite the factual findings, as set forth in the published opinion of the Superior Court of New Jersey, Appellate Division, decided on March 19, 2007, with respect to Petitioner's direct appeal, as follows:

The trial court record discloses that, on Sunday, June 11, 2000, at approximately 9:15 p.m., Bertran Draing, his father, Hans Draing, and Bertran's fiancée, Diana Sloan, drove up to the Draing's home in Paramus in time to witness a suspected burglary in progress next door. The two men proceeded to investigate, while Sloan watched from the Draing's adjoining property. As she stood near the Draing's garage, she observed two black men leave the neighbor's house, proceed rapidly toward a parked white Ford Expedition truck, and take off. Both Sloan and Bertran had an opportunity to view one of the two men before he got into the truck's passenger seat. Although they sought to pursue the vehicle in a car owned by

5

Bertran's father, they were unsuccessful. However, as Bertran drove, Sloan placed a 911 call, in which she described the truck, gave a partial license plate number, and identified the two alleged perpetrators as black males. A clothing description was also provided.

A broadcast of the content of the 911 call was received by patrol officers Robert Vonschalscha and Frank Scott, who were together at the time, but driving separate marked police vehicles. The two officers proceeded in their cars toward Paramus Road and, within approximately one minute, observed a white Ford Expedition being driven within 1.5 miles of the crime scene. The officers conducted a felony stop of the vehicle without incident, and after observing that the license plate contained the "4" and "J" attributed in the 911 call to the burglars' truck, ordered the vehicle's occupants, two black males, to exit the truck and to lie face down on the road. Vonschalscha and Scott handcuffed the two men, and while they remained in the road, Scott returned to the truck to determine whether it contained any other occupants. His search disclosed none. However, he observed a stun gun in plain view on the truck's middle seat. As a result, the two males were arrested. A further search of the vehicle by Scott for additional weapons, occurring while Vonschalscha and a third, recently-arrived, officer placed the two offenders in separate police cars belonging to Scott and to a fourth, newly-arrived officer, disclosed various incriminating articles of clothing and a pair of wire cutters. Upon subsequent inquiry by Vonschalscha, Gatson gave a false name and birth date.

Thereafter, the police conducted a show-up identification of suspects by bringing Bertran and Sloan jointly to the scene, where they identified the vehicle and its passenger, co-defendant Collins. Neither could identify Gatson prior to or at trial. Defendants were subsequently charged with burglary and unlawful possession of a stun gun. Additionally, defendant Gatson was charged with hindering apprehension as the result of the misinformation that he had given to the police. The defendants were tried together, and they were convicted of all charges.

6

(Petition at Ex. A; Ra3, App. Div. Op., March 19, 2007; *State v. Gatson*, Docket No. A-0632-03T4 slip op. at 5-7).

## II. STATEMENT OF CLAIMS

Petitioner asserts the following claims in his petition for habeas relief:

**Ground One:** The trial court committed error in denying Petitioner's suppression motion because the police did not have a reasonable, articulable suspicion to stop Petitioner's vehicle, in violation of his Fourth Amendment rights.

**Ground Two:** The trial court erred in denying Petitioner's motion to suppress by finding that probable cause existed to search Petitioner's vehicle, in violation of his Fourth Amendment rights.

**Ground Three:** The out-of-court identification of co-defendant and thereby Petitioner should have been excluded because the roadside show-up identification procedure was so impermissibly suggestive that it gave rise to a substantial likelihood of misidentification, thereby depriving Petitioner of his right to due process of law.

**Ground Four:** The trial judge committed error in finding Diana Draing's testimony at the *Wade* hearing to be credible, thereby violating Petitioner's right to a fair trial.

7

**Ground Five:** The trial court erred in denying Petitioner's motion to suppress regarding statements made to the police at the scene of the stop, thereby violating Petitioner's Fifth and Fourteenth Amendment rights.

**Ground Six:** The trial court's omission of any instruction regarding the jury's obligation to assess the credibility of incriminating out-of-court statements allegedly made by Petitioner to the police deprived Petitioner of his Fifth, Sixth and Fourteenth Amendment rights against self-incrimination, and his right to a fair trial by a fair and impartial jury.

**Ground Seven:** The trial court committed error by not allowing the jury to consider the lesser included offense of criminal trespass in Count I of the indictment, thereby violating Petitioner's Sixth Amendment right to a fair and impartial jury.

**Ground Eight:** The prosecutor committed misconduct during summation, which deprived Petitioner of his right to due process of law in violation of the Fifth and Fourteenth Amendment.

**Ground Nine:** The state courts erred in denying Petitioner's state court petition asserting ineffective assistance of trial counsel, direct appeal counsel, PCR counsel and PCR appellate counsel, in violation of Petitioner's Fifth and Sixth Amendment rights.

**Ground Ten:** The trial court committed reversible error by giving an erroneous and incomplete jury instruction on burglary, which deprived Petitioner of his right to due process of law in violation of his Sixth and Fourteenth Amendment rights.

The State essentially contends that the petition is without merit, or fails to raise a claim of federal constitutional dimension that would entitle Petitioner to habeas relief.

### III. STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Leamer v. Fauver*, 288 F.3d 532, 547 (3d Cir. 2002)(courts must construe *pro se* complaints liberally); *Royce v. Hahn*, 151 F.3d 116, 118 (3d Cir. 1998); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Thus, because Petitioner is proceeding as a *pro se* litigant in this matter, the Court will accord his habeas petition the liberal construction intended for *pro se* petitioners.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, this Court has jurisdiction to entertain a petition for federal habeas relief as follows:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

Section 2254(d) of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d); *see also Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012).

"Clearly established Federal law" should be determined as of the date of the relevant state court decision and is limited to the record that was before the state court that adjudicated the claim on the merits. *Greene v. Fisher*, ---U.S. ----, 132 S.Ct. 38, 181 L.Ed.2d 336 (2011); *Cullen v. Pinholster*, 563 U.S.

10

----, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011). A state-
court decision is "contrary to" clearly established federal law
if the state court (1) contradicts the governing law set forth
in Supreme Court cases or (2) confronts a set of facts that are
materially indistinguishable from a decision of the Supreme
Court and nevertheless arrives at a different result. *Williams
v. Taylor*, 529 U.S. 362, 405-06 (2000); *Jamison v. Klem*, 544
F.3d 266, 274 (3d Cir.2008). The state court judgment must
contradict clearly established decisions of the Supreme Court,
not merely law articulated by any federal court, *Williams*, 529
U.S. at 405, although district and appellate federal court
decisions evaluating Supreme Court precedent may amplify such
precedent, *Hardcastle v. Horn,* 368 F.3d 246, 256 n. 3 (3d Cir.
2004)(citing *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877,
890 (3d Cir. 1999)). "[C]ircuit precedent does not constitute
'clearly established Federal law, as determined by the Supreme
Court,' [and] therefore cannot form the basis for habeas relief
under AEDPA." *Parker*, 132 S.Ct. at 2155. The state court is
not required to cite or even have an awareness of governing
Supreme Court precedent "so long as neither the reasoning nor
the result of [its] decision contradicts them." *Early v.
Packer*, 537 U.S. 3, 8 (2002); *Jamison*, 544 F.3d at 274-75. Few

state court decisions will be "contrary to" Supreme Court precedent.

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent. A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407. A showing of clear error is not sufficient. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). Nor is habeas relief available merely because the state court applied federal law erroneously or incorrectly. *See Harrington v. Richter*, 562 U.S. ----, ----, 131 S.Ct. 770, 785, 178 L.Ed.2d 624 (2011) (Under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." (quoting *Williams* at 410)); *see also Metrish v. Lancaster*, No. 12-547, slip op. 14-15 (U.S. May 20, 2013); *Thomas v. Varner*, 428 F.3d 491, 497 (3d Cir. 2005); *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005). "A state court's determination that a claim

12

lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 131 S.Ct. at 786-87. *See also Metrish v. Lancaster*, No. 12-547, slip op. 2-3 (U.S. May 20, 2013).

The Supreme Court repeatedly has reiterated the deference that the federal courts must accord to state court decisions. *See Felkner v. Jackson*, ---U.S. ----, 131 S.Ct. 1305, 1307, 179 L.Ed.2d 374 (2011) ("AEDPA imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."); *Cullen v. Pinholster*, 131 S.Ct. at 1398; *Eley v. Erickson*, __ F.3d __, 2013 WL 1405923, *4 (3d Cir. April 9, 2013). *See also Harrington*, 131 S.Ct. at 786 ("We must use habeas corpus as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through

appeal."); *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("whether the trial judge was right or wrong is not the pertinent question under AEDPA"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable-a substantially higher threshold."); *Lockyer*, 538 U.S. at 75 ("it is not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was erroneous."). Further, AEDPA's standard applies even where "the state court analyzed and rejected a habeas petitioner's federal claims on the merits but gave 'no indication of how it reached its decision.'" *Grant v. Lockett*, 709 F.3d 224, 230 (3d Cir. 2013)(quoting *Han Tak Lee v. Glunt*, 667 F.3d 397, 403 (3d Cir. 2012)).

A state court decision is based on "an unreasonable determination of the facts" only if the state court's factual findings are "'objectively unreasonable in light of the evidence presented in the state-court proceeding.'" *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)(citing, *inter alia*, 28 U.S.C. § 2254(d)(2)). Moreover, a federal court must accord a presumption of correctness to a state court's factual findings,

which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e); see also *Rice v. Collins*, 546 U.S. 333, 339 (2006) (petitioner bears the burden of "rebutting the presumption by 'clear and convincing evidence.'" (quoting 28 U.S.C. § 2254(e)(1)); *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001)(factual determinations of state trial and appellate courts are presumed to be correct). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." *Campbell v. Vaughn*, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. *Id.* (citing *Marshall v. Lonberger*, 459 U.S. 422, 433 (1982)).

Even if the petitioner is entitled to habeas relief under AEDPA, the court may grant the writ only if the error was not harmless. Under the harmless error standard, the court must "assess the prejudicial impact of [the] constitutional error in [the] state-court criminal trial." *Fry v. Pliler*, 551 U.S. 112, 121 (2007). The court should hold the error harmless unless it led to "actual prejudice," in the form of a "substantial and

injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation omitted); *Eley v. Erickson*, __ F.3d __, 2013 WL 1405923 (3d Cir. April 9, 2013).

## IV. DISCUSSION

### A. Fourth Amendment Search Claims

In Grounds I and II, Petitioner alleges that the trial court erred in denying his motion to suppress an allegedly unlawful search without probable cause, in violation of his Fourth Amendment rights. Petitioner alleges that the police pulled over the van he was driving even though he had not committed any traffic violations. (Pet., ¶ 12, Ground Two.) He further contends that the police failed to satisfy the reasonable, articulable suspicion standard to stop a moving vehicle in violation of his Fourth Amendment rights, and that there was no probable cause for searching the vehicle after the traffic stop. (Pet., ¶ 12, Ground One.)

Before trial, Petitioner moved to suppress evidence from the allegedly unlawful stop and search. The trial court denied the motion, holding that the search of the van was proper pursuant to the automobile exception to the warrant requirement. The trial court also found that probable cause existed for a further search of the van because Patrol Officer Scott had

discovered a stun gun in plain view, and because "rapidly

unfolding events and the inherent mobility of the vehicle

provided exigent circumstances that permitted a warrantless

search of the vehicle at the scene." (Ra3, App. Div. Op. at 8,

Mar. 19, 2007.)

Petitioner then raised these same arguments on direct

appeal. The Appellate Division found no merit to Petitioner's

claims. Citing state case law, the court observed that

"[s]eemingly innocent facts can sustain a finding of reasonable

suspicion if, considered in the aggregate, they support an

objectively reasonable belief that they are consistent with

criminal conduct." (Id. at 9.) The Appellate Division then

noted that the facts and circumstances in Petitioner's case

provided the "minimal level of objective justification" for the

stop and search:

> ... Officers Vonschalscha and Scott were informed, on a
> rainy Sunday at 9:24 p.m., that two suspected burglars had
> escaped in a white Ford Expedition from the location of the
> crime on Mill Road, a dead-end street that emptied onto
> Paramus Road. The officers proceeded to Paramus Road,
> which they judged to be a logical get-away route for the
> mend and, within approximately one minute from the time of
> the initial police bulletin, they observed a truck that
> matched the description that had been given, being driven
> on Paramus Road, in a location within 1.5 miles of the site
> of the burglary. ... Further justification became evident
> when the police were able to observe that the truck's
> license plate was JNU-43, and thus that it contained the
> "J" and "4" that had been reported. The fact that Sloan
> had also erroneously reported a "1" was insufficient to

17

render meaningless the partial correspondence of the
license plate to the description. Although observation by
the police of the occupants of the vehicle would have
increased their level of suspicion when making the stop,
the absence of any such observation, obstructed by the
truck's tinted glass, does not render the stop
constitutionally infirm.

(*Id.* at 9-10.)

Petitioner also challenged the search of the van following
observance of the stun gun, which yielded a wet sweatshirt and
two ski masks in a shopping bag on the floor near the stun gun,
as well as another wet sweatshirt under the front seat with a
pair of wire cutters. Petitioner had argued at the suppression
hearing that the vehicle search required exigent circumstances
that did not exist at the time of the search. Testimony at the
suppression hearing disclosed that, at the time Officer Scott
checked the van for additional occupants and the stun gun was
found in plain view, three or four officers were present at the
scene, and two of the occupants (whose appearances matched the
descriptions given by eyewitnesses to the burglary) had been
removed from the vehicle and handcuffed. The van was in the
southbound lane of Paramus Road, and the police had stopped
traffic in both directions, which caused a slow congestion of
traffic. Petitioner also argued that there was no evidence that
any of the defendants had access to the vehicle, or that they

had any "confederates" who were "in a position to obtain or destroy any of vehicle's contents." (*Id.* at 11-12.)

The Appellate Division held that the trial judge properly invoked the automobile exception to the warrant requirement for the police officer's search of Petitioner's van, and found that there was sufficient evidence of exigent circumstances and probable cause. The Appellate Division relied on the circumstances revealed at the hearing, namely, that a felony stop had occurred, a stun gun was found in plain view, and relatively few police officers were present at the scene, which was a well-travelled major public road. In addition, the court noted that not all of the defendants had been secured in a police vehicle. (*Id.* at 12-17.)

Petitioner's Fourth Amendment claim is precluded by the holding of *Stone v. Powell*, 428 U.S. 465 (1976), wherein the Supreme Court held that

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. In this context the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force.

*Stone v. Powell*, 428 U.S. at 494-95 (footnotes omitted); *see also Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002)("An

erroneous or summary resolution by a state court of a Fourth

Amendment claim does not overcome the [*Stone*] bar") (citations

omitted).

In this case, Petitioner had a full and fair opportunity to

present his Fourth Amendment claims to the New Jersey courts.

Petitioner "is at most alleging that the Fourth Amendment claims

were decided incorrectly or incompletely by the New Jersey

courts, allegations which are insufficient to surmount the *Stone*

bar." *Marshall*, 307 F.3d at 82. Because Petitioner had a full

and fair opportunity to litigate his Fourth Amendment claims and

"[a]n erroneous ... resolution by a state court of a Fourth

Amendment claim does not overcome the [*Stone*] bar," *id*.,

Petitioner's Fourth Amendment claims are not cognizable in this

§ 2254 proceeding. *See Hubbard v. Jeffes*, 653 F.2d 99, 103 (3d

Cir. 1981).

## B. Identification Claim

Next, in Ground III of his petition, Petitioner argues that

the out-of-court identification of his co-defendant, and thereby

Petitioner, should have been excluded because the roadside show-

up identification procedure was so impermissibly suggestive that

it gave rise to a substantial likelihood of misidentification.

Petitioner alleges that he and his co-defendant were handcuffed

and laid on the ground in the rain when the alleged victims were

brought to the street location to identify them as the culprits. (Petition, Ground III (a).) In a related claim, Ground IV of the petition, Petitioner contends that the trial court erred in finding Diana Sloan Draing's testimony at the *Wade*[2] hearing to be credible. (*Id.*, Ground IV (a).) Petitioner raised these arguments on direct appeal.

A *Wade* hearing was conducted before trial, and the trial court determined that the show-up procedure utilized by the police was unduly suggestive, but did not result in a very substantial likelihood of irreparable misidentification. (Ra11, 2T 146:10-17.) The Appellate Division agreed. Referring to the Supreme Court decisions, *Simmons v. United States*, 390 U.S. 377 (1968) and *Manson v. Brathwaite*, 432 U.S. 98 (1977), the Appellate Division discussed the totality of the circumstances in reaching this conclusion, including the testimony of eyewitness Diana Sloan Draing at the *Wade* hearing:

> ... [Sloan] stated that upon arriving at the Draing's house and determining that something was amiss next door, she stood near the Draing's garage door while Bertran and Hans Draing commenced their investigation. From there, she could see the white Ford truck bearing the Expedition model name parked at the street between the Draing's and the neighbor's property. As Sloan was standing by the garage, she witnessed two men running toward the Expedition from the neighbor's house. In order to obtain a better view, she moved to the middle of the driveway, and was able to determine that the two men were black and that the man who entered the passenger side of the vehicle was dressed in a

---

[2] *United States v. Wade*, 388 U.S. 218 (1967).

white tee-shirt and dark pants. Sloan noticed that he had very dark arms, face and neck, and had short black hair. As he entered the truck, he turned toward Sloan, permitting her to view his face for a few seconds. She testified that she did not get a good look at the vehicle's driver, but believed that he was wearing an orange or red shirt.

Sloan, along with Bertran Draing, were taken to the scene by a police officer, who parked thirty to forty feet from the Expedition. Sloan positively identified the Ford Expedition, stating that she had no doubt in that regard. The two defendants were then removed from the police vehicles and placed along side of the patrol car of one of the officers. Although both were handcuffed, Sloan stated that she did not look at their hands, but only at their faces, which were illuminated by a spot light shown from one of the police cars. Vonschalscha's testimony established that neither man was identified as the Expedition's passenger before the identification occurred.

Although Sloan was unable to identify defendant Gatson, she positively identified co-defendant Collins as the man she had seen entering the passenger side of the Expedition, testifying that she recognized his clothing and his face, his hair, and particularly, his wide-set nose.

(Ra3, App. Div. Op. at 18-20, Mar. 19, 2007.)

Petitioner challenged the reliability of Sloan's identification testimony on the grounds that she had observed the intruders only once, for a short period of time, on a rainy night from a distance of thirty feet. He also pointed to conflicting testimony between the eyewitnesses as to the degree of lighting at the time of the incident. Further, Petitioner argued that Sloan's testimony as to Collins' physical characteristics was not sufficiently detailed to serve as the foundation for a reliable identification, and that the

22

identification was tainted by the earlier identification of the

Expedition. (*Id.* at 20.)

The Appellate Division rejected Petitioner's arguments, and affirmed the trial court's determination that Sloan's identification was reliable and her testimony credible. Specifically, the court noted that Sloan's general description of Collins:

> matched his actual appearance at the show-up; she had an opportunity to view his face as he turned toward her before entering the car; her attention at the time of defendants' flight was focused on the need for an accurate identification; and the time elapsing between Sloan's view of Collins and her identification of him was no more than thirty minutes. We also regard as insufficient to undermine the reliability of the identification Hans Draing's description of the light level at the scene, since even he was able to view the perpetrators before they left in the Expedition. In the circumstances presented, we also do not regard Sloan's identification of the defendants' vehicle prior to her identification of Collins as fatally undermining her subsequent identification of him. If it had been the potent factor that Gatson claims, Sloan would not have distinguished Collins as the passenger without prompting, while failing to identify Gatson as the vehicle's driver.
>
> We thus concur with the motion judge's conclusion that the corrupting influence of the police's identification procedures were outweighed in this case, and that the identification was, therefore, sufficiently reliable to meet constitutional standards.

(*Id.* at 20-21.)

The Supreme Court has observed that improper pretrial identification procedures by police may cause witnesses to

misidentify a criminal. *See Simmons v. United States*, 390 U.S. 377, 383 (1968). An identification procedure may be deemed unduly and unnecessarily suggestive if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification." *Id.* at 384. In that case, "the witness thereafter is apt to retain in his memory the image of the [misidentification] rather than that of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Id.* at 383-84. "It is the likelihood of misidentification which violates a defendant's right to due process.... Suggestive confrontations are disapproved because they increase the likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).

However, the Supreme Court also has held that, even if an identification procedure is unnecessarily suggestive, admission of the suggestive identification does not violate due process so long as the identification possesses sufficient aspects of reliability, *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977), for reliability is the "linchpin in determining the admissibility of identification testimony." *Id.* at 114; *see also United States v. Wise*, 515 F.3d 207, 215 (3d Cir. 2008). The central question is "whether under the totality of the circumstances the identification was reliable even though the confrontation

procedure was suggestive." *Brathwaite*, 432 U.S. at 106 (quoting *Biggers*, 409 U.S. at 199); *see also United States v. Maloney*, 513 F.3d 350, 355 (3d Cir. 2008). Factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199. Significantly, the Supreme Court has ruled that, where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process. *See Coleman v. Alabama*, 399 U.S. 1, 7 (1970).

Here, the New Jersey courts' determined that the show-up was unduly suggestive but, based on the totality of circumstances, it did not result in a substantial likelihood of irreparable misidentification. This Court finds, after careful review of the record, that the New Jersey courts' determination was not contrary to or an unreasonable application of Supreme Court precedent. In particular, the New Jersey courts' determination that the identification possessed sufficient aspects of reliability was not contrary to or an unreasonable

application of *Biggers*. *See Biggers*, 409 U.S. at 199. The state courts evaluated Sloan's testimony and found that Sloan had sufficient opportunity to view Collins at the time of the crime, and that her description of Collins to the police "matched his actual appearance at the show-up." Moreover, the state courts found significant that only thirty minutes had elapsed between Sloan's witness of Collins at the crime scene and the identification, and that it was clear that Sloan's identification of Collins was based entirely upon her observation of him at the time of the incident. Consequently, under these circumstances, the state courts' adjudication of Petitioner's identification claim was not contrary to, or an unreasonable application of *Biggers* and other applicable Supreme Court jurisprudence, and Petitioner has not demonstrated by clear and convincing evidence that these factual findings pertaining to Sloan's testimony were incorrect, as required under 28 U.S.C. § 2254(e)(1). Therefore, Petitioner is not entitled to habeas relief on Ground III and Ground IV of his petition.

## C. Admission of Petitioner's Identification Statement to Police

Next, in Ground V of his habeas petition, Petitioner contends that the trial court erred in denying his motion to suppress a statement he gave to the police on the scene

concerning his identity. At a *Miranda*[3] hearing on June 26, 2002, testimony by Officer Vonschalscha revealed that after the Ford Expedition that Petitioner was driving had been stopped, both Petitioner and co-defendant Collins were ordered to exit the vehicle, drop to their knees and then lie on the ground. They were then handcuffed and placed in separate patrol cars. (Ra15, 6T 128:3-137:10.) Officer Vonschalscha then contacted the officers at the scene of the burglary and learned that witnesses were being transported to the site for roadside identification. (*Id.*, 132:7-24.) While waiting for the witnesses to arrive, Vonschalscha asked Petitioner if Petitioner had a driver's license to which Petitioner replied no. Vonschalscha then asked Petitioner for his name, date of birth and address. Petitioner falsely answered that his name was Mark Crews and gave September 12, 1969 as his date of birth. (*Id.*, 133:24-134:24.) Vonschalscha asked no other questions. (*Id.*, 135:15-18.) Petitioner then asked, "What's this about? We're just coming from Great Adventure." Vonschalscha answered, "I'll tell you in a minute." (*Id.*, 137:9-20.)

At the conclusion of the *Miranda* hearing, the trial judge ruled that the statements were admissible because Officer Vonschalscha was simply questioning the identity of the driver

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

and passenger at the roadside stop. Consequently, no *Miranda*
warnings were necessary. (*Id.*, 158:1-159:5; 159:8-161:2.)

Petitioner raised the issue on direct appeal, and the
Appellate affirmed the trial court's determination. The
Appellate Division regarded Vonschalscha's questions as "routine
booking inquiries, that were not designed to, nor likely to
produce an incriminating response from Gatson." (Ra3, App. Div.
Op. at 22, Mar. 19, 2007.) The court further stated: "That
Gatson chose to answer these questions untruthfully, thereby
exposing himself to criminal prosecution for hindering
apprehension, does not change the character of the questions
themselves." (*Id.*)

The Fifth Amendment provides, in part, that no person
"shall be compelled in any criminal case to be a witness against
himself." U.S. Const. amend. V. The Fourteenth Amendment
incorporates the Fifth Amendment privilege against self-
incrimination. *See Malloy v. Hogan*, 378 U.S. 1, 8 (1964). In
*Miranda*, the Supreme Court held that "without proper safeguards
the process of in-custody interrogation ... contains inherently
compelling pressures which work to undermine the individual's
will to resist and to compel him to speak where he would not
otherwise do so freely." *Id.* at 467. In other words, there is
no doubt that, when police ask questions of a suspect in

custody, and that suspect was never administered the required warning, *Miranda* dictates that self-incriminating, inculpatory statements made by the suspect are presumed compelled and they are excluded from evidence at trial in the State's case in chief. *See Oregon v. Elstad*, 470 U.S. 298, 317 (1985). Hence, a confession taken during a custodial interrogation without any *Miranda* warning facially violates the privilege against self-incrimination. *See Thompson v. Keohane*, 516 U.S. 99 (1995).

Warnings apprising an individual of his Fifth Amendment right against self-incrimination are required whenever an individual is subjected to custodial interrogation by law enforcement officers. *Miranda*, 384 U.S. at 444. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. *Accord Stansbury v. California*, 511 U.S. 318, 322 (1994).

In this case, this Court finds that the few questions asked by Vonschalscha to ascertain Petitioner's identity do not qualify as a custodial interrogation. *See Pennsylvania v. Muniz*, 496 U.S. 582, 601-02 (1990)(finding that a suspect's responses to police questions regarding his name, address, height, weight, eye color, date of birth, and current age, while in custody and without a prior *Miranda* warning, were not

required to be suppressed because the questions were of a routine booking nature and were not intended to elicit information for investigatory purposes.); *United States v. Bishop*, 66 F.3d 569, 572 n.2 (3d Cir. 1995)(routine booking questions do not constitute an "interrogation"). Accordingly, this Court finds that the decision of the state courts as to the admissibility of Petitioner's false statements to the police concerning his identity was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was the state court decision based upon an unreasonable determination of the facts in light of the evidence presented to it. Petitioner is not entitled to relief on Ground Five of the petition.

## D.  Jury Instruction Claims

Petitioner also asserts that the trial court committed error with respect to jury instructions in violation of his Sixth and Fourteenth Amendment rights to a fair and impartial jury and due process of law. (Petition, Grounds Six, Seven and Ten.) In particular, Petitioner alleges that the trial court wrongly omitted any instruction to the jury concerning the jury's obligation to assess incriminating out-of-court statements made by Petitioner to police. He also argues that the trial court committed error by not charging the jury on the

lesser included offense of criminal trespass.  Finally,
Petitioner generally contends that the trial court committed
reversible error by giving an erroneous and incomplete jury
charge on burglary, which deprived Petitioner of his right to
due process of law and his right to a fair and impartial jury.

1.  *Failure to Instruct on Lesser Included Offense*

In Ground Seven, Petitioner argues that it was a violation
of his Sixth Amendment right to a fair and impartial jury when
the trial court failed to charge the jury on the lesser included
offense of criminal trespass with regard to Count I of the
indictment.  Petitioner raised this claim on direct appeal, and
the Appellate Division rejected it, finding that "there was no
rational basis for an acquittal on the greater charge of
burglary that would have required the trial judge to instruct
the jury on the lesser included offense of criminal trespass."
(Ra3, App. Div. Op. at 25, Mar. 19, 2007.)  The court added,
"there was no evidence from which a jury, finding that
defendants had entered the neighbor's home without the privilege
to do so, could have concluded that their conduct was impelled
by anything other than an intent to commit an offense."  (*Id.*)

Questions regarding jury instructions are typically matters
of state law not cognizable in a federal habeas action, unless
the instruction was so prejudicial as to amount to a violation

of due process and fundamental fairness. *See Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

In this instance, Petitioner asserts that the trial court erred by omitting an instruction on the lesser included offense of criminal trespass. The Supreme Court has held that due process requires that a jury instruction on a lesser included offense be given only when the evidence warrants such an instruction. *See Hooper v. Evans*, 456 U.S. 605, 611 (1982). *See also Dansby v. Trombley*, 369 F.3d 657, 659 (6th Cir. 2010) ("Dansby's [§ 2254] claim fails because the Supreme Court has never held that due process requires the giving of jury instructions on lesser-included offenses in noncapital cases"). Moreover, on habeas review, a trial court's finding as to whether the evidence at trial warranted an instruction is a finding of fact entitled to the § 2254(d) presumption of correctness. *Miller v. Fenton,* 474 U.S. 104, 112 (1985).

Here, the state courts found that the evidence did not support an instruction on the lesser included offense of criminal trespass on Count I of the indictment. This Court agrees and finds that Petitioner was not deprived of a fair

trial by the omission of a jury charge on the lesser included offense of criminal trespass. The state courts' decisions in this regard were neither contrary to nor an unreasonable application of Supreme Court precedent. Accordingly, Petitioner is not entitled to relief on this claim.

2. *Omitted Charge as to Petitioner's Statement to Police*

Petitioner next claims that it was error for the trial court not to instruct the jury regarding its obligation to assess the out-of-court statement made by Petitioner to the police. This claim relates to Petitioner's claim that the trial court erred in admitting his statement to the police concerning his false identity without an accompanying instruction to the jury that it should disregard Petitioner's statement if it found the statement not to be credible. Petitioner raised this issue on direct appeal, arguing that a jury instruction was required under state law, namely, *State v. Hampton*, 61 N.J. 250, 272 (1972); *State v. Kociolek*, 23 N.J. 400, 421-22 (1957); *see N.J.R.E.* 104(c).

The Appellate Division held that *Hampton* and *Kociolek* were not relevant because Petitioner's response to police questions regarding his name and date of birth are not generally inculpatory like a confession or admission. Thus, responses to routine questions as to name, address and date of birth are "not

susceptible to the generally recognized risk of inaccuracy and error in communication and recollection of verbal utter[ances] and misconstruction by the hearer." (Ra3, App. Div. Op. at 23, Mar. 19, 2007.) The Appellate Division further held:

> In the present case, Gatson's statement of his name was not challengeable as the result of considerations of inaccuracy to which *Kociolek* and *Hampton* apply. Clearly the statement, as reported, was not credible, since no evidence was adduced at trial to support a contention that Gatson was, in fact, Mark Crews and that Gatson's alleged statement to the police in that regard was correct. The only issue presented was whether the statement was in fact made as reported by Officer Vonschalscha. Evidence that Gatson signed the acknowledgement of *Miranda* warnings with the name "Mark Crews" provides strong corroborative proof in that regard, and in large measure obviates any controversy as to whether Gatson assumed that identity. Indeed, a review of the record demonstrates that Gatson's response to the charge of hindering apprehension was not a denial that he gave a false name, but rather that he did so to avoid apprehension for driving on a suspended license, not to avoid apprehension for burglary.
>
> In this context, we find that the trial court's instruction regarding the State's burden of proof on the charge of hindering apprehension and its general instruction regarding witness credibility were sufficient to apprise the jury of its proper deliberative functions. If *Kociolek* and *Hampton* were to apply, we find no plain error in the absence of the instruction required by those decisions.

(Id. at 23-24.)

As stated above, a jury instruction that is inconsistent with state law does not merit federal habeas relief. *See Estelle*, 502 U.S. at 71-72 ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas

34

relief."). Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding, the only question for the court to consider is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72-73. It is well established that the instruction "may not be judged in artificial isolation," but must be viewed in the context of the instructions as a whole and the trial record to determine whether it violates the Constitution. *Id.* (citations omitted); *see also Smith v. Spisak*, 558 U.S. 139, 130 S.Ct. 676, 684 (2010)(no right to habeas relief if Supreme Court has not previously held jury instruction unconstitutional for same reason); *Waddington v. Sauausad*, 555 U.S. 179 (2009).

Moreover, a habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense ... must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). This is because district courts do not "sit as super state supreme courts for the purpose of determining whether jury instructions were correct under state law with respect to the elements of an offense and defenses to it." *Id.*

*See also Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) ("[I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some [constitutional right]") (citations and internal quotation marks omitted)).

However, a jury instruction that "reduce[s] the level of proof necessary for the Government to carry its burden [of proof beyond a reasonable doubt] is plainly inconsistent with the constitutionally rooted presumption of innocence." *Cool v. United States*, 409 U.S. 100, 104 (1972). *See also In re Winship*, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused); *Smith v. Horn*, 120 F.3d 400, 416 (1997), *cert. denied*, 522 U.S. 1109 (1998) (the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law.").

Additionally, as noted above, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155.

In this case, the Appellate Division determined that a *Kociolek* charge did not apply because of the corroborating evidence of Petitioner's signature as "Mark Crews" on the *Miranda* form, and because Petitioner purportedly gave that false name since he was driving with a suspended license and not to hinder apprehension for burglary. Thus, this Court finds that any omission of such a charge does not constitute error, and did not rise to the level of a constitutional violation. Accordingly, the state court's decision in this regard was not "contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" and as such, Petitioner is not entitled to habeas relief on this ground. *See Smith v. Spisak*, 558 U.S. at 148-149 (no right to habeas relief if Supreme Court has not previously held jury instruction unconstitutional for same reason).

3. *Jury Charge on Burglary*

Petitioner finally asserts that the trial court gave an erroneous and incomplete charge on burglary. Namely, Petitioner

37

asserts that the trial court did not read to the jury the entire text of a burglary charge, which is supposed to read as follows:

A person is guilty of burglary if, with purpose to commit an offense therein the person:

(1) Enters a structure, or a separately secured or occupied portion thereof, unless the structure was at the time open to the public or person is licensed or privileged to enter; *or*

(2) Surreptitiously remains in a structure or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so.

(Docket entry no. 10, Petitioner's Memorandum of Law at 12.) *See also N.J.S.A.* 2C:18-2a(1) and (2) (emphasis added). At trial, the judge instructed the jury that "[a] person is guilty of burglary if, with purpose to commit an offense therein, the person enters a structure or a separately secured or occupied portion thereof," and that "[s]pecifically the defendants in this case are charged with entering with the purpose to commit an offense." (Ra17, 8T 166:3-8.) The trial judge further instructed the jury:

So in order for you to find the defendants guilty of burglary the State must prove beyond a reasonable doubt the following elements. One, that the defendants entered the structure known as 607 Mill Run Road in Paramus, which is the Lulko home, without permission. Two, that the defendants did so with the purpose to commit an offense therein. Now the State's theory is that the defendants intended to commit a theft inside the Lulko home.

(*Id.*, 166:19-167:2.)

Petitioner contends that the trial court's instruction was incomplete because the judge did not read the second part of a burglary charge, *N.J.S.A.* 2C:18-2a(2), and this omission was reversible error because the jury was not informed as to all the necessary elements of a burglary offense. Petitioner raised this claim in his state PCR proceeding, and before the Supreme Court of New Jersey. On appeal from denial of the PCR petition, the Appellate Division rejected Petitioner's claim, finding that the "trial judge gave the applicable portion of the burglary charge, and Gatson was not prejudiced by the omission of the irrelevant portion." (Ra8, App. Div. Op. at 10, Apr. 12, 2010.)

This Court has reviewed the record, and notes that the jury charge as a whole did not wrongly describe the burden of proof on the burglary charge. The second portion of the jury charge, *N.J.S.A* 2C:18-2a(2), did not apply in this case; it was an alternative manner of committing burglary which was not relevant to the facts of this case. Thus, this Court finds no error in the trial court's omission of this unrelated portion of the statute that would rise to the level of a constitutional deprivation. Consequently, there was no error of constitutional dimension, and the state court ruling on this issue is neither contrary to nor an unreasonable application of the applicable federal law. Nor was the decision based upon an unreasonable

determination of the facts. Therefore, Petitioner is not entitled to relief on this claim.

## E. Prosecutorial Misconduct

In Ground Eight of the petition, Petitioner asserts a claim of prosecutorial misconduct during summation. In particular, on direct appeal from his conviction, Petitioner argued that the prosecutor improperly characterized Diana Sloan Draing's testimony as the truth (Ra17, 8T 98:23-99:3); incorrectly told the jury that when the vehicle was stopped the defendants had masks on their faces (Id., 108:19-109:2); improperly held up co-defendant's boots for the jury to look at them to see whether there was mulch or grass on them (Id., 115:20-116:7, 118:9-21); and finally, improperly told the jury that Laura Lulko found a glove on her property that was similar to the gloves found in the defendants' vehicle (Id., 122:1-24, 123:1-5, 124:3-16:22).

The Appellate Division found that the comments made by the prosecutor during summation did not prejudice the outcome of the trial to warrant a new trial. In particular, the court observed that the prosecutor's comments "attested to the likely truth of statements by the State's lay witnesses whose credibility previously had been challenged by the defense in summation, and thus constitutes an invited, albeit overstated, response that did not unfairly prejudice Gatson." (Ra3, App. Div. Op. at 26,

Mar. 19, 2007.) Moreover, the Appellate Division noted that the trial court sustained defense counsel's objections to the prosecutor's comments and gave the jury proper cautionary instruction, which the court must assume was followed. (*Id.* at 26-27.) As to the comments concerning co-defendant Collins' boots, the Appellate Division ruled:

> We conclude that a further comment by the prosecutor suggesting that footprints leading to the master bedroom could have been made by Collins's boots was not so prejudicial as to warrant the relief Gatson seeks. The jury could have concluded on a "common knowledge" basis that those boots, in evidence bearing noticeable traces of mulch or grass, were of the sort that could track water and other detritus onto the scene. The absence of any expert testimony suggesting a correspondence between the tracks and the boots is not critical to that determination. At the most, the prosecutor's comments suggested that the boots were a possible source of the prints, and that the jury could draw such an inference after considering the boots' condition after viewing them in the jury room. He did not argue that a correlation between the boots and the prints had in any sense been demonstrated, or that direct proof of Collins' presence near the bedroom existed. As such, we do not regard the comments to have been objectionable, and if they were, we note a curative instruction, again, was promptly provided by the court.

(*Id.* at 27.)

In *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), the Supreme Court articulated the test applicable to the claims asserting prosecutorial misconduct. The Court held that "the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Id.* at 180 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness is essential to the very concept of justice." *Id.* at 642; *see also Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012); *Greer v. Miller*, 483 U.S. 756, 765 (1987)(To violate due process, "the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial")(citation and internal quotation marks omitted). More specifically, a "reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant." *Rolan*, *supra*, (quoting *Moore v. Morton*, 255 F.3d 95, 107 (3d Cir.2001)).

Moreover, it is not enough to show that the prosecutor's conduct was universally condemned. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The quantum or weight of the evidence is crucial to determining whether the prosecutor's statements before the jury were so prejudicial as to result in a denial of due process. *See Darden*, 477 U.S. at 182; *Donnelly*, 416 U.S. at 644; *Moore v. Morton*, 355 F.3d 95, 111 (3d Cir. 2001). This analysis applies to prosecutorial opening statements and

summations as well as to the questions asked by prosecutors.
*See Marshall v. Hendricks*, 307 F.3d 36, 73 (3d Cir. 2002).

Prosecutorial "vouching," if it takes place, could qualify
as misconduct for the purposes of habeas review only if "the
prosecuting attorney [vouches for] the credibility of a
Government witness through personal knowledge or by other
information outside of the testimony before the jury." *United
States v. Walker*, 155 F.3d 180, 184 (3d Cir. 1998); *see also
United States v. Lore*, 430 F.3d 190, 211 (3d Cir. 2005)
(Vouching occurs when a prosecutor "(1) assures the jury that
the testimony of a government witness is credible, and (2) ...
bases his assurance on either his claimed personal knowledge or
other information not contained in the record"). The Supreme
Court has observed that "[t]he prosecutor's vouching for the
credibility of witnesses and expressing his personal opinion
concerning the guilt of the accused pose two dangers: such
comments can convey the impression that evidence not presented
to the jury, but known to the prosecutor, supports the charges
against the defendant and can thus jeopardize the defendant's
right to be tried solely on the basis of the evidence presented
to the jury; and the prosecutor's opinion carries with it the
imprimatur of the Government and may induce the jury to trust
the Government's judgment rather than its own view of the

evidence." *United States v. Young*, 470 U.S. 1, 19 (1985).
However, where the "prosecutor's statement of his belief that
respondent intended to commit a fraud contained no suggestion
that he was relying on information outside the evidence
presented at trial [and h]e supported his comment by referring
to respondent's own testimony ... when viewed in context, the
prosecutor's remarks cannot be read as implying that the
prosecutor had access to evidence outside the record." *Id.; see
also Walker*, 155 F.3d at 184 ("[W]here a prosecutor argues that
a witness is being truthful based on the testimony given at
trial, and does not assure the jury [of] the credibility of the
witness based on his own personal knowledge, the prosecutor is
engaging in proper argument and is not vouching").

"On habeas review, however, prosecutorial misconduct such
as vouching does not rise to the level of a federal due process
violation unless it affects fundamental fairness of the trial.
Thus, habeas relief is not available simply because the
prosecutor's remarks were undesirable or even universally
condemned. As stated above, the relevant question for a habeas
court is whether those remarks 'so infected the trial with
unfairness as to make the resulting conviction a denial of due
process.'" *Lam v. Kelchner*, 304 F.3d 256, 271 (3d Cir.
2002)(quoting *Darden*, 477 U.S. at 180-81)(citation omitted). To

determine whether a prosecutor's conduct violates a defendant's right to a fair trial, courts should examine: (1) "the curative instructions, if any, given by the trial court"; (2) "the weight of the properly admitted evidence against the defendant"; and (3) "the prosecutor's improper actions." *United States v. Liburd*, 607 F.3d 339, 344 (3d Cir.2010)(citing *United States v. Morena*, 547 F.3d 191, 194 (3d Cir.2008).)

Here, the comments to which Petitioner objects did not so infect Petitioner's trial with unfairness as to make the resulting conviction a denial of due process under *Donnelly*, 416 U.S. at 643. *See Gooding v. Wynder*, 2012 WL 207068 (3d Cir. Jan. 25, 2012). The trial court record shows that most of the prosecutorial comments made in summation were in response to defense attacks on the State's witnesses, which the Appellate Division found to be an "invited, albeit overstated, response" to defense counsel's remarks in closing argument. (Ra3, App. Div. Op. at 26, Mar. 19, 2007.) Moreover, most all of defense objections to the prosecutor's comments were sustained and the trial court gave the jury curative instructions. Even Petitioner's objections to the prosecutor's comments about co-defendant's boots were sustained and a cautionary instruction was given to the jury. (*Id.* at 26-27.) Viewing the trial record as a whole, this Court finds that the New Jersey courts'

45

rejection of the prosecutorial misconduct claims were not
contrary to, or an unreasonable application of Supreme Court
precedent. *See Lam*, 304 F.3d at 272. While some of the
comments may have been objectionable, there was no error of
constitutional dimension with respect to Petitioner's claims of
prosecutorial misconduct. Accordingly, this ground for habeas
relief will be denied.

## F. Ineffective Assistance of Counsel

Petitioner next alleges that he was denied his Sixth
Amendment right to effective assistance of counsel because his
trial counsel failed to adequately investigate, interview
witnesses, and prepare for trial. Petitioner also alleges that
trial counsel failed to file a severance motion, failed to
object to the incomplete and erroneous jury charges, and failed
to propose any jury instructions on lesser included offense of
criminal trespass. Petitioner further asserts that his
appellate counsel and his PCR counsel were ineffective.

### 1. *Ineffective Assistance of Trial Counsel*

The Court first will discuss the clearly established
federal standard as set forth in *Strickland v. Washington*, 466
U.S. 668 (1984). In *Strickland*, the Supreme Court "has
recognized that the right to counsel is the right to the
effective assistance of counsel. Government violates the right

to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. Counsel, however, can also deprive a defendant of the right to effective assistance, simply by failing to render adequate legal assistance." *Strickland*, 466 U.S. at 685-86 (internal quotation marks and citations omitted)(citing and quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970), and *Cuyler v. Sullivan*, 446 U.S. 335, 344-50 (1980)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Ross v. Varano*, __ F.3d __, 2013 WL 1363525, *9 (3d Cir. April 5, 2013).

To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate (1) that his counsel's performance fell below an objective standard of reasonableness, *and* (2) that but for counsel's errors the result of the underlying proceeding would have been different. *Strickland*, 466 U.S. at 687-88 (emphasis added). "Since *Strickland*, the Supreme Court and the Third Circuit have emphasized the necessity of assessing an ineffectiveness claim in light of all the circumstances." *Grant*

47

*v. Lockett*, 709 F.3d 224, 232 (3d Cir. 2013); *Siehl v. Grace*, 561 F.3d 189, 195 (3d Cir. 2009) (citing cases).

When a federal habeas petition under § 2254 is based upon an ineffective assistance of counsel claim, "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard." *Grant*, 709 F.3d at 232 (quoting *Harrington*, 131 S.Ct. at 785). For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (internal quotation marks omitted) (emphases in original). "A state court must be granted a deference and latitude that are not in operation when the case involves [direct] review under the *Strickland* standard itself." *Id.* Federal habeas review of ineffective assistance of counsel claims is thus "doubly deferential." *Id.* (quoting *Cullen v. Pinholster*, 131 S.Ct. at 1403). Federal habeas courts must "take a highly deferential look at counsel's performance" under Strickland, "through the deferential lens of § 2254(d)." *Id.* (internal quotation marks and citations omitted).

Petitioner raised his ineffective assistance of counsel claim in his state PCR proceedings. The PCR court reviewed Petitioner's claims under the *Strickland* standard, (Ra20, PCRT

33:19-35:7), and determined that Petitioner did not meet either prong under *Strickland*. (*Id.*, 42:11-43:3.) First, the PCR court rejected the argument that the lack of notes concerning jury selection, witness interviews and summation, or the absence of time sheets and a retainer agreement are indicative of deficient performance and ineffective representation. (*Id.*, 36:2-37:14.) The court commented that "nothing in the actual trial transcripts, hundreds of pages, that rises to the level of ineffective assistance in my opinion." (*Id.*, 37:19-21.) Further, the court found no showing of prejudice, noting that there was "a lot of proof in this case and compelling as the State pointed out direct and circumstantial evidence with respect to the case against the defendant." (*Id.*, 37:22-38:1; 38:25-39:6.) Thus, in rejecting Petitioner's claims, the PCR court concluded that defense counsel had rendered professional and thorough representation, and that there was "ample evidence ... for this jury to find guilt beyond a reasonable doubt." (*Id.*, 41:11-42:10.)

Petitioner appealed the PCR court's decision, and the Appellate Division affirmed the ruling as follows:

> Gatson's primary contention on appeal is that the PCR judge should have held an evidentiary hearing based upon the fact that trial counsel's file was sparse and contained no trial notes. He argues that the sparse file and absence of notes

49

in and of themselves amounted to a prima facie case of
ineffective assistance of counsel. We disagree.

A review of the record reflects that trial counsel made
several motions to suppress evidence leading to pre-trial
evidentiary hearings, including a challenge to the initial
stop, the search of the vehicle, and Gatson's own
misleading statements at the time of his arrest. Trial
counsel cross-examined trial witnesses and made trial
objections. He also made several objections during the
State's summation. He moved for a judgment of acquittal at
the end of the testimonial part of the trial.

Gatson fails to articulate with any specificity what
investigations trial counsel should have made, and what
facts and witnesses would have been revealed. Without such
specifics, he fails to present a prima facie case or
demonstrate the need for an evidentiary hearing.

(Ra8, App. Div. Op. at 9-10, Apr. 12, 2010.)

Having carefully reviewed the record, and considering the

claims asserted by Petitioner herein, this Court does not find

that counsel was deficient in his investigation of this case and

in his preparation and performance before and during trial. The

Appellate Division aptly notes that Petitioner has not

identified with any specificity what investigations should have

been made and what information or witnesses such investigations

would have revealed. Indeed, in this habeas application,

Petitioner has not provided any factual basis or even conjecture

as to what further investigation was necessary and what it would

have proven for his defense. "[C]ounsel has a duty to make

[only] reasonable investigations or to make a reasonable

50

decision that makes particular investigations unnecessary."
*Strickland*, 466 U.S. at 691. *See also Kimmelman v. Morrison*,
477 U.S. 365, 384 (1986); *accord Lewis v. Mazurkiewicz*, 915 F.2d
106 (3d Cir. 1990)(expressly adopting *Strickland* and *Kimmelman*
rationale for the purposes of failure-to-investigate analysis);
*Echols v. Ricci*, 2011 WL 3678821 (D.N.J. Aug. 19, 2011), aff'd,
2012 U.S. App. LEXIS 14803 (3d Cir. July 19, 2012). At best,
Petitioner simply argues that his trial counsel's file did not
contain notes, timesheets or a retainer agreement, which do not
bear on the issue of trial counsel's performance at trial, which
is the standard under *Strickland*.

Moreover, the record shows that trial counsel actively
pursued pretrial motions, in particular, motions to suppress
evidence, Petitioner's statement to police, and the
identification of the co-defendant; counsel also vigorously
cross-examined State witnesses, and made objections during
trial and during the prosecutor's summation. Thus, the mere
fact that the trial attorney's file produced on state PCR review
did not contain notes or time sheets is not sufficient to
demonstrate a lack of trial preparation, a lack of trial
strategy, or deficient performance.

Furthermore, Petitioner's allegation that counsel was
deficient with regard to jury charges also fails because, as

discussed above in this Opinion at pages 30 to 39, *supra*, his claims of error regarding jury charges and the omission of an instruction on the lesser included offense of criminal trespass were found to be without substantive merit.

Next, Petitioner's claim that trail counsel was ineffective in failing to request a severance lacks merit.[4] It is highly unlikely that the trial court would have granted a severance at Petitioner's trial given the strong interest courts have in maintaining joint trials. *See Johnson v. Tennis*, 549 F.3d 296, 302 (3d Cir. 2008)(noting that public interest in judicial economy favors joint trials where the same evidence would otherwise be presented at separate trials of defendants charged with the same offense). *See also Zafiro v. United States*, 506 U.S. 534, 537 (1993)(The United States Supreme Court has instructed that there is a preference in the federal system for joint trials of defendants who are indicted together as it promotes efficiency and serves the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.); *Paul v. Britton*, 2012 WL 3536798, *11 (M.D.Pa. Aug. 14, 2012). Thus, improper joinder does not, in itself, violate the

---

[4] This Court notes that Petitioner does not appear to have raised this particular claim on state court review. Nevertheless, under 28 U.S.C. § 2254(b)(2), this Court may deny this habeas claim on the merits, notwithstanding Petitioner's failure to exhaust his state court remedies.

Constitution. Rather, misjoinder would rise to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial. *Paul, supra* (citing *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986)). Here, Petitioner has not demonstrated prejudice resulting from his counsel's failure to sever as he did not demonstrate that having his own trial would have resulted in a different verdict than the one rendered. The same evidence and witnesses would have been used at both trials, even Diana Sloan Draing's identification of co-defendant Collins. Petitioner ignores the fact that he was stopped with co-defendant Collins moments after and a short distance from the scene of the burglary in Petitioner's vehicle, in which other circumstantial evidence was recovered, namely, a stun gun, masks, and tools, etc. Counsel cannot be found ineffective for failing to bring meritless motions. *See Johnson*, 549 F.3d at 303; *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

Finally, Petitioner has not demonstrated any resulting prejudice that would have changed the outcome of this case. Both the PCR court and the Appellate Division found that there was ample evidence, both direct and circumstantial, against Petitioner to support the verdict. (Ra20, PCRT 41:11-42:10.)

Therefore, this Court finds that Petitioner fails to demonstrate deficient performance by trial counsel on any asserted claims that would have had any effect of undermining the verdict. Further, this Court concludes that the determination of the state PCR court and appellate court in finding no constitutionally ineffectiveness of trial counsel, resulted in a decision that was neither contrary to, nor involved an unreasonable application of, clearly established federal law under *Strickland*, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See Williams*, 529 U.S. at 413. Accordingly, the Court will deny federal habeas relief on this ineffective assistance of trial counsel claim because it is substantively meritless.

    2.  *Ineffectiveness of Appellate Counsel*

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a state defendant the effective assistance of counsel on a first direct appeal as of right. *Evitts v. Lucey*, 469 U.S. 387 (1985). The *Strickland* test for effective assistance of counsel also applies to the performance of appellate counsel. *See Lewis v. Johnson*, 359 F.3d 646, 656 (3d Cir. 2004). According to *Smith v. Robbins*, 528 U.S. 259 (2000), when the issue is appellate counsel's

failure to raise specific issues, a petitioner satisfies the first *Strickland* prong by showing that appellate counsel was "objectively unreasonable [i.e.,] that counsel unreasonably failed to discover [arguably] nonfrivolous issues and to file a merits brief raising them." 528 U.S. at 285. An arguably non-frivolous issue is "one that counsel can argue in good faith with some potential for prevailing." *Id*. Consequently, the general principle established by Smith is that appellate counsel need not raise every non-frivolous issue on appeal; he "may select from among them in order to maximize the likelihood of success on appeal." *Id*. at 288; *see also Jones v. Barnes*, 463 U.S. 745, 750 (1983)(rejecting "per se rule that appellate counsel must raise every nonfrivolous issue").

Moreover, in order to prevail on a claim that appellate counsel was ineffective a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal. *See Buehl v. Vaughn*, 166 F.3d 163, 173-74 (3d Cir.), *cert. dismissed*, 527 U.S. 1050 (1999).

Defense counsel further has a constitutionally imposed duty to consult with a defendant about whether to appeal when "there

is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). The term "'consult' convey[s] a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id.* at 478. *See also Buehl*, 166 F.3d at 172 (rejecting state petitioner's § 2254 claim that right to effective assistance of counsel on direct appeal was violated by appellate counsel's failure to argue that trial counsel had rendered ineffective assistance).

In this case, Petitioner broadly asserts that his appellate counsel failed to adequately examine, raise and argue pertinent issues on appeal. In particular, Petitioner appears to allege that appellate counsel failed to raise on direct appeal the lack of a jury charge on the lesser included offense of criminal trespass.

This Court has reviewed the state court record and factual findings, and concludes that there is no merit to Petitioner's claim of ineffective assistance of appellate counsel. Appellate counsel prepared a comprehensive brief on behalf of Petitioner

as to the key issues advanced here by Petitioner. Moreover, Petitioner has not shown that his appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 2d Cir. 1994). Indeed, as discussed above, the omitted claim on direct review regarding a jury charge on a lesser included offense was found to be meritless. Appellate counsel need not raise non-meritorious claims that have no reasonable probability of reversing Petitioner's conviction on appeal. *See Buehl*, 166 F.3d at 173-74. Therefore, this Court finds that Petitioner's ineffective assistance of appellate counsel claim must be denied for lack of merit because Petitioner cannot demonstrate either deficient performance or any resulting prejudice.

### 3. *Ineffectiveness of PCR Counsel*

Finally, Petitioner generally claims that his PCR counsel was ineffective. He also appears to assert that it was error for the PCR court to deny an evidentiary hearing. Infirmities in a state PCR proceeding generally do not raise constitutional questions in a federal habeas action. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation"). Since errors in Petitioner's state PCR

proceedings, even if presumed present, were collateral to his conviction and sentence, they could not give rise to a claim for federal habeas relief. *See Hassine*, 160 F.3d at 954. *See also* 28 U.S.C. § 2254(i)(the "ineffectiveness or incompleteness of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254"). *But see Martinez v. Ryan*, --- U.S. ----, 132 S.Ct. 1309, 1315, 182 L.Ed.2d 272 (2012)(Supreme Court held that a prisoner may establish cause for the procedural default of an ineffective assistance of counsel claim by demonstrating that his or her counsel in an "initial-review collateral proceeding" provided ineffective assistance of counsel, thus creating a narrow exception to the rule set forth in *Coleman v. Thompson*, 501 U.S. 722, 753-54 (1991), that an attorney's errors in a post-conviction collateral proceeding do not constitute cause to excuse a procedural default.). Therefore, Petitioner's challenges based on denial of an evidentiary hearing and ineffectiveness of PCR counsel have no merit and are denied for failure to assert a violation of his federal rights. Further, because Petitioner has not demonstrated that he is entitled to an evidentiary hearing in this matter, his claim for an evidentiary hearing is denied for lack of merit.

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## IV. CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, that Petitioner's request for an evidentiary hearing is denied for lack of merit, and finally, that a certificate of appealability will not issue. An appropriate Order follows.

DICKINSON R. DEBEVOISE
United State District Judge